FILED IN OPEN COURT
U.S.D.C. - Atlanta

MAR 16 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OLIVIA WARE | Criminal Information<br><br>No. 1:21-CR-098 |

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT 1
*(Bank Fraud – 18 U.S.C. § 1344)*

1. Beginning on a date unknown, but from at least in or about April 2020, and continuing until May 13, 2020, in the Northern District of Georgia and elsewhere, the defendant, OLIVIA WARE, knowingly executed and attempted to execute a scheme and artifice to defraud Bank OZK, a financial institution headquartered in Little Rock, Arkansas, and insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material fact, money, funds, and other property owned by and under the custody and control of Bank OZK, in violation of Title 18, United States Code, Section 1344.

### Background

It is relevant to the Information that during the above-listed time period:

2. The defendant, OLIVIA WARE, was a resident of the Northern District of Georgia.

3. WARE was the registered agent and Chief Executive Officer of Let's Talk About the Family, Inc., a Georgia corporation headquartered at WARE's residence.

4. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

5. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

7. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion in additional PPP funding.

8. The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses must use PPP loan proceeds for payroll costs,

2

interest on mortgages, rent/lease, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds for payroll expenses.

9. The amount of a PPP loan that a small business may have been entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

10. To obtain a PPP loan, a qualifying business must submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses, and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

11. The SBA oversaw the PPP. However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed

3

number of employees, was transmitted by the lender to the SBA while processing the loan.

12. Bank OZK was an FDIC-insured financial institution headquartered in Little Rock, Arkansas. Bank OZK was a PPP lender, and was authorized to lend funds to eligible borrowers under the terms of the PPP.

## Purpose of the Scheme to Defraud

13. The purpose of the scheme was for WARE, by submitting false and fraudulent information about her business Let's Talk About the Family, Inc., to unlawfully obtain a PPP loan from Bank OZK and to use the fraudulently-acquired loan proceeds to benefit herself and others who did not work for Let's Talk About the Family, Inc., in violation of the terms of the PPP loan agreement.

## Manner and Means

14. The manner and means by which WARE carried out the scheme to defraud included the following:

15. WARE submitted, and caused to be submitted, to Bank OZK false and fraudulent documents concerning Let's Talk About the Family, Inc. The false and fraudulent documents generally created the appearance that the business earned millions of dollars in revenue, paid more than a million dollars in payroll, and had fifty-four (54) employees. For example, WARE submitted, and caused to be submitted, the following records to Bank OZK in connection with her application of a PPP loan:

   a. A false and fraudulent 2018 IRS Form 1120S ("U.S. Income Tax Return for an S Corporation") for Let's Talk About the Family, Inc.

that claimed that the company had gross receipts of $5,943,228 against a cost of goods sold of $5,140,927.

b. A false and fraudulent 2019 IRS Form 940 ("Employer's Annual Federal Unemployment (FUTA) Tax Return") for Let's Talk About the Family, Inc. that claimed that the company paid $1,551,057 to its employees.

c. A false and fraudulent 2020 IRS Form 941 ("Employer's QUARTERLY Federal Tax Return") for Let's Talk About the Family, Inc. that claimed that in the first tax quarter, the company: (1) paid a total of $329,950.51 in wages, tips, or other compensation, (2) had fifty-four (54) employees, and (3) withheld $39,594.06 in federal income tax.

d. A payroll document that purported to show the salaries of Let's Talk About the Family, Inc.'s fifty-four (54) employees.

16. In fact, from 2019 through the first quarter of 2020, Let's Talk About the Family, Inc. did not: (1) make any tax filings with the IRS, (2) pay unemployment tax to the IRS, (3) withhold federal income tax for any employee, or (4) have fifty-four (54) employees.

17. It was also part of the scheme to defraud that WARE submitted a PPP loan application to Bank OZK in which WARE sought a loan of approximately $323,100. In the PPP loan application, WARE falsely certified that any PPP funds loaned to Let's Talk About the Family, Inc. would be used to retain workers, to fund payroll, and to make mortgage interest payments, lease payments, and

5

utility payments. In fact, as WARE well knew, when she submitted the PPP loan application, she intended to spend (and did spend) the PPP money to benefit herself and others who did not work for Let's Talk About the Family, Inc.

18. On or about May 13, 2020, based on WARE's false and fraudulent misrepresentations, Bank OZK approved and funded a PPP loan for Let's Talk About the Family, Inc. in the amount of $323,100. Bank OZK transferred the PPP loan to an account at Bank OZK, opened by WARE, and ending in the numbers 9520. WARE also transferred, and caused the transfer of, some of the PPP funds from the 9520 account to a second account at Bank OZK, also opened by WARE, and ending in the numbers 5245.

19. By way of example only, using the PPP money in the 9520 account and the 5245 account as follows, WARE:

   a. wrote checks totaling tens of thousands of dollars to individuals who were not employees of Let's Talk About the Family, Inc., including apparent family members;

   b. paid approximately $23,800 for an in-ground swimming pool for WARE's residence;

   c. paid off the principal on the mortgage of her residence;

   d. spent tens of thousands of dollars on furniture, video equipment, light fixtures, and other home improvement items; and

   e. paid bills that were personal and otherwise unrelated to Let's Talk About the Family, Inc.

6

## Execution of the Scheme

20. On or about the date set forth below, in the Northern District of Georgia and elsewhere, the defendant, OLIVIA WARE, knowingly executed and attempted to execute a scheme and artifice to defraud Bank OZK, the deposits of which were then insured by the FDIC, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, money, funds, and other property owned by and under the custody and control of Bank OZK, a financial institution,

| Date of Execution | Act of Execution | Amount of PPP Loan | Loan Funding Date |
|---|---|---|---|
| April 28, 2020 | Submission of PPP Loan Application | $ 323,100 | May 13, 2020 |

all in violation of Title 18, United States Code, Section 1344.

## COUNT 2
*(Money Laundering – 18 U.S.C. § 1957)*

21. The United States Attorney re-alleges and incorporates herein by reference the factual allegations set forth in paragraphs 1 through 19 of this Information.

22. On or about the date set forth below, in the Northern District of Georgia, the defendant, OLIVIA WARE, knowingly engaged and attempted to engage in the following monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of United States currency as described below, such property having been

derived from a specified unlawful activity, that is, bank fraud, as charged in Count 1 of the Information,

| Date | Financial Transaction |
|---|---|
| June 24, 2020 | Check numbers 1051, 1058, 1059, 1060, and 1065, each for $4,760 (for a total of $23,800) drawn against the Bank OZK account number ending in 9520, and payable to a person with the initials of J.D., the owner of Pools for Less, LLC, a Florida-based company. |

all in violation of Title 18, United States Code, Section 1957.

## FORFEITURE

23. Upon conviction of the offense alleged in Count One of the Information, the defendant, OLIVIA WARE, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of said violation, including, but not limited to, the following:

   a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Information.

24. Upon conviction of the offense alleged in Count Two of the Information, the defendant, OLIVIA WARE, shall forfeit to the United States, pursuant to Tile 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to, the following:

a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Count Two of this Information.

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

[Intentionally left blank]

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

KURT R. ERSKINE
*Acting United States Attorney*

*Bernita Malloy*
BERNITA MALLOY
*Assistant United States Attorney*
Georgia Bar No. 718905

*Trevor Wilmot*
TREVOR C. WILMOT
*Assistant United States Attorney*
Georgia Bar No. 936961
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181